IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

THEODORE J. THOMPSON                                                                           PLAINTIFF

v.                                        Case No. 4:21-cv-00647-JM

PROCTOR & ASSOCIATES;
WILLARD PROCTOR, JR.; DOES                                                                   DEFENDANTS

## ORDER

Theodore Thompson, who was a resident of Florida when he initiated this *pro se* complaint, alleged a myriad of violations that included "Title I and V of the Americans with Disabilities Act, Article 14 of the Human Rights Act, discrimination, legal malpractice, professional negligence, negligence, gross negligence, fraudulent misrepresentation, unethical conduct, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, and violation of the Arkansas Rules of Professional Conduct." (Doc. 2 at 1). On screening, 28 U.S.C. § 1915(e)(2), diversity jurisdiction was determined and summonses issued. (Doc. 3). Defendants have moved to dismiss arguing Thompson has failed to state a claim upon which relief can be granted. (Doc. 5). Thompson objected (Doc. 16), and Defendants replied. (Doc. 17). Although Thompson was granted time to file a sur-reply (Doc. 20), no reply has been filed. Thompson has timely supplemented his proof. (Doc. 22). Defendants' motion to dismiss is ripe for decision.

**I.       Introduction**

Thompson, who admits lifelong mental health issues, says that his brother George Anderson acted as his sole caregiver from 1978 until his untimely June 2015 death from surgical complications. (Doc. 2 at 3-4). Believing his brother died as a result of medical error, Thompson and his siblings discussed hiring an attorney to represent them in a wrongful death action. (*Id*. at 6).

At the suggestion of his sister, Thompson telephoned Defendant Willard Proctor sometime in the fall of 2015. (*Id*. at 6). Thompson states:

> During this initial conference, attorney Willard Proctor Jr. advised Mr. Thompson that he had the experience and dedication to proceed with the legal action against the aforementioned defendants, and he would proceed and look forward to meeting Mr. Thompson in person and would keep Mr. Thompson in the loop via mail, telephone, and through [his sisters] Barbara and Charlotte Ann Davis.

(*Id*. at 6). Thompson says roughly a year later – he by telephone and his siblings in person – talked with Proctor. (*Id*.). In the meeting, Proctor told the group he was short $600 of the $1800 he would need to obtain an essential pathology report. (*Id*. at 7). Thompson's siblings partially had paid Proctor $1200, so Thompson agreed to mail the remaining $600 directly to the pathologist who he believed Proctor had employed to write the report. (*Id*.).

After hearing nothing further from Proctor, Thompson independently called the pathologist in mid-2016. (*Id*.). The pathologist both confirmed receipt of Thompson's check and that he had sent a completed report to both Proctor and Thompson's siblings. (*Id*.). Thompson, however, did not contact Proctor again until late 2018, when Thompson says he called him to inquire about the status of the case. (*Id*. at 8). Thompson maintains that, while Proctor initially gave him assurances about the case, Proctor became evasive when Thompson requested basic information like the case number. (*Id*.). Proctor, nevertheless, offered to mail Thompson a complete copy of the case file. (*Id*.). Dissatisfied with the entire conversation, Thompson told Proctor he intended to come to Little Rock to meet with him in person, which Proctor welcomed. (*Id*.). Thompson says that, when he attempted to make a formal appointment, Proctor told him he was too "swamped in litigation to make an appointment" with either Thompson or his siblings. (*Id*. at 8-9). The group eventually met at Proctor's office at the end of 2018. (*Id*.). At that meeting, Thompson says Proctor provided copies of roughly 12-14 pages of documents he represented as the entirety of the case file. (*Id*.).

2

There were no court documents among the provided papers. (*Id*.). Frustrated, Thompson questioned Proctor about potential statute of limitations problems. In response, Proctor asked Thompson to leave saying "[I] can't work with mentally ill people." (*Id*. at 10).

Within weeks of this meeting, Thompson required hospitalization for mental health treatment. (*Id*.). He did not speak to Proctor again until a February 19, 2019 email in which Thompson told Proctor of his intent to sue him for legal malpractice. (*Id*. at 10). Thompson again came to Little Rock to meet with his sisters and Proctor, but Proctor cancelled the meeting explaining that he had received a one-year extension of time in their tort claim filed in Mississippi. (*Id*. at 10). Thompson did not speak with Proctor again. In May 2021, Thompson confirmed, among other things, that Proctor had never initiated a case on his behalf. (*Id*. at 11).

## II. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Analysis

### A. Abandoned federal claims and defective state claim

As an initial matter, in response to the motion to dismiss Thompson abandoned his ADA and Human Rights Act claims. (Doc. 16 at 3). Further, Arkansas does not recognize the tort of

negligent infliction of emotional distress. *See Dowty v. Riggs*, 2010 Ark. 465, *7 (2010). Accordingly, those claims are dismissed.

### B.     Jurisdiction

Having dismissed the federal claims, only state law claims remain. Pointing to Thompson's 2021 move to Arkansas (Doc. 11), Defendants first argue that diversity no longer exists and asks the Court to decline to exercise jurisdiction over the state law claims. Diversity, however, is determined at the time the suit is instituted, *see Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990), and "jurisdiction, once attached, is not impaired by a party's later change of domicile." *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957). That Thompson has now moved to Arkansas does not remove this Court's jurisdiction.

### C.     State Law Claims

In an indiscriminate fashion, Thompson offers a number of legal theories for how Proctor has harmed him. While the Court must take Thompson's allegations as true, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), Thompson must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Thompson, however, makes no effort to discuss the elements of any claim or to elucidate how his allegations are legally sufficient to progress. As will be discussed below, Thompson's claims are insufficiently pleaded to survive dismissal.

A number of Thompson's claims can be readily dismissed. Thompson's discrimination claim is meritless because he has offered no evidence of discrimination of any kind. Accordingly, his discrimination claim is dismissed. Similarly, in order to demonstrate intentional infliction of emotional distress, Thompson would have had to show that Defendants intended to distress him in such a way that no reasonable person could be expected to endure. *See Rees v. Smith*, 2009 Ark.

4

169, *5. Thompson has presented no evidence of either Defendants' intent or that he suffered unendurable distress as a result. Finally, whether Defendants violated the Arkansas Rules of Professional Conduct is best weighed by the Office of the Committee on Professional Conduct following a formal grievance. This Court will not make a referral to the Committee.

The Court must now address Thompson's remaining claims: legal malpractice, negligence, fraud, and breach of contract. Thompson believed that he and his siblings hired Proctor to litigate a wrongful death claim on their behalf for the death of their brother George Anderson. Whether his siblings shared this belief, however, is unknown as Thompson has not provided any written documents memorializing a formal engagement. Thompson is silent on the terms of engagement, how Defendants would be paid for services rendered, who would fund discovery, and offers no letters or affidavits documenting his or his siblings understanding of the relationship. At most, Thompson sent a third-party $600 for a pathology report.

Defendants say there was no attorney/client relationship; therefore, Thompson's legal-malpractice and professional negligence claims must be dismissed. ARK. CODE ANN. § 16-62-102(b). In order to pursue a legal malpractice suit, direct privity of contract must exist between the parties. *Jackson v. Ivory*, 353 Ark. 847, 856 (2003); ARK. CODE ANN. § 16-22-310(a). Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties." *Id.* (internal citations omitted). Defendants' assertion that there was no attorney/client relationship with Thompson because the medical malpractice statute required such claims to be brought by a personal representative of the estate is not meritorious because the statute also provides that "heirs at law" may bring suit. ARK. CODE ANN. § 16-62-102. Unquestionably, a sibling is an heir. *See* ARK. CODE ANN. § 16–62–102(d); *Brewer v. Poole*, 362 Ark. 1, 11 (2005). However, whether Thompson arguably could have initiated a medical-malpractice suit on his

5

brother's behalf is not dispositive of whether he now can assert a legal malpractice claim against Defendants. In order for Thompson to succeed on a legal malpractice case, he would have to "prove the merits of the underlying case as a part of the proof of the malpractice case." *Evans v. Hamby*, 2011 Ark. 69, *4 (2011). That means, Thompson would have to show that he would have won the medical malpractice case. Thompson has not met this burden. The very information Thompson provides reveals no evidence that his brother's doctors deviated from the standard of care. (Doc. 22). The Court certainly cannot credit Thompson's unverified hearsay assertions from a pathologist on the strength of the medical malpractice case when a writing has been provided concluding that his brother's death was unavoidable. (Doc. 2 at 7-8; Doc. 22 at 12-13). Accordingly, Thompson's legal malpractice claim is insufficiently pleaded.

In order to succeed on a negligence claim, Thompson would have needed to show that he was owed a duty that was breached by the Defendants and that he was injured as a result. *See Duran v. Southwest Arkansas Electric Coop. Corp.*, 2018 Ark. 33, *6 (negligence). Again, assuming that Thompson was, in fact, owed a duty and that the duty was breached, the Court is left guessing as to injury. Reading Thompson's complaint liberally, it appears the loss of what could have been a meritorious medical-malpractice claim is his injury. But that injury, as pleaded, is amorphous at best.

As set out above, it is apparent that there was no express contract. However, an attorney can be sued under the theory of breach of an implied contract. *Pettus v. McDonald*, 343 Ark. 507, 513 (2001). In order to demonstrate a breach of contract, Thompson must prove the existence of an agreement, that the agreement was breached, and that he suffered damages as a result of the breach. *See Sexton L. Firm, P.A. v. Milligan*, 329 Ark. 285, 298 (1997). Even were the Court to accept as true that there was an implied contract, Thompson has not shown that he suffered

damages. At most, Thompson says the pathologist told him he had a good medical malpractice case. (Doc. 2 at 7-8). But that unsubstantiated statement is not enough to meet pleading requirements particularly in light of Thompson's most recent filing demonstrating opposite conclusions. As a result, Thompson's breach of contract claim cannot stand. In the same vein, Thompson's allegations of fraud fail because Thompson has failed to plead damages with particularity. *See Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, *12-13; ARK. R. CIV. P. 9(b).

## IV.    Conclusion

Defendants' motion to dismiss (Doc. 5) is GRANTED. Thompson's complaint is DISMISSED without prejudice.

IT IS SO ORDERED this 2nd day of March, 2022.

_____
UNITED STATES DISTRICT JUDGE